R E C E I V E D

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
2019 FEB 13  A 12: 50 **NORTHERN DIVISION**

| | |
|---|---|
| **MONIQUE REGINA McNEAL,** | ) |
| U.S. DISTRICT COURT | ) |
| **Plaintiff,** MIDDLE DISTRICT ALA | ) |
| | ) |
| **v.** | )  Case No.: 3:19-CV-122-SRW |
| | ) |
| **MACON COUNTY BOARD OF** | )  **JURY TRIAL DEMANDED** |
| **EDUCATION,** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

### Preliminary Statement – Nature of Action

Plaintiff, Monique Regina McNeal, complains against the above-named defendant as follows:

1. Plaintiff, Monique Regina McNeal, brings this action for legal and equitable relief to redress unlawful discrimination in employment on the basis of disability or being regarded as disabled or having a record of disability, and to redress the harms she suffered in violation of federal law.

2. This action arises under the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§12101 *et seq.*, including but not limited to 42 U.S.C. §§12112 & 12117; and section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §794.

3. Plaintiff seeks redress against defendant's failure to reasonably accommodate plaintiff's known disabilities, defendant's discrimination against plaintiff because of her disabilities (or because she was regarded as disabled or had a record of disability), and

defendant's retaliation against her for engaging in conduct statutorily protected by opposing discriminatory treatment, all in violation of federal law. This action seeks declaratory and injunctive relief, equitable relief, back pay, and/or compensatory and punitive damages for plaintiff to redress and punish defendants' violations of plaintiff's federally-protected rights.

## Jurisdiction and Venue

4. The subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 (federal question) and 1343 (civil rights); 42 U.S.C. §12117 (ADA); 29 U.S.C. §794a(a)(2) (Rehabilitation Act); and 28 U.S.C. §§2201 and 2202 (Declaratory Judgment Act).

5. Plaintiff, Monique Regina McNeal, has fulfilled all administrative prerequisites and conditions precedent to the institution of this action, pursuant to the ADA, 42 U.S.C. §12117(a), which incorporates 42 U.S.C. §2000e-5, from Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq*., as amended by the Civil Rights Act of 1991:

a. On or about April 27, 2017, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission, which was filed within 180 days of the commission of the unlawful employment practices alleged herein.

b. On or about November 15, 2018, the United States Department of Justice, Civil Rights Division ("Justice Department"), issued and mailed to Plaintiff a letter advising her of her right to sue regarding her EEOC charge. *See* Exhibit A.

c. This complaint has been filed within ninety (90) days of receipt of the notification from the Justice Department of Plaintiff's right to sue on her EEOC charge.

6. Defendant, Macon County Board of Education, resides in this judicial district; and the events or omissions giving rise to plaintiff's claims occurred in this judicial district. Venue of this action is proper under 28 U.S.C. §1391(a); and under 42 U.S.C. §2000e-5(f)(3), as incorporated by both the ADA, 42 U.S.C. §12117, and the Rehabilitation Act, 29 U.S.C. 794a(a)(2).

## Parties

7. Plaintiff, Monique Regina McNeal ("McNeal" or "Plaintiff"), is over twenty-one (21) years of age; an African-American female citizen of the United States and the State of Alabama; and a resident of Russell County, Alabama. Plaintiff was employed by Defendant, Macon County Board of Education, at all times material to this complaint. As such, Plaintiff was an "employee" of the Defendant within the meaning of the ADA.

8. Plaintiff is a "qualified individual with a disability" in that with or without reasonable accommodations she could perform the essential functions of her job, all within the meaning of the ADA, 42 U.S.C. §12111(8), and the Rehabilitation Act; and is an employee, aggrieved party, and complaining party entitled to bring suit pursuant to all applicable statutes and for each claim listed herein.

9. Alternatively, Plaintiff is a person regarded as having a disability or having a record of disability within the meaning of the ADA and the Rehabilitation Act.

10. Defendant, Macon County Board of Education ("Board" or "Defendant"), is a governmental body within the State of Alabama and does business in the State of Alabama. Defendant employs at least fifteen (15) persons, and otherwise meets the definition of an "employer" and the other jurisdictional prerequisites within the meaning of the ADA. Defendant is, and at all times material to this complaint has been, a

3

recipient of Federal financial assistance for the programs or activities at issue, and

otherwise meets the other jurisdictional prerequisites within the meaning of the

Rehabilitation Act, 29 U.S.C. §794.

## Factual Background

11.  Plaintiff, Monique Regina McNeal, was hired by the defendant Macon

County Board of Education as a Special Education Teacher at George Washington Carver

Elementary School in Tuskegee, Alabama for the 2016-17 school year.

12.  Plaintiff was employed by the defendant Board from on or about August 1,

2016 (her first day of work) until on or about November 2, 2016, when the defendant

Board, without providing any reasons, voted to terminate her employment.

13.  Plaintiff is a highly qualified, experienced, highly skilled, dedicated special

education teacher.

14.  Plaintiff McNeal at all material times held two Alabama professional

certificates, specifically Class A (Master's degree level), Collaborative Special Education

Teacher for grades K through 6, and also for grades 6 through 12.  She is a Highly-

Qualified Teacher under Alabama's HQT guidelines.  She has earned a Bachelor of Arts

(B.A.) in human performance and kinesiology from Huntingdon College, and a Master's

in Education (M.Ed.) in special education transition and collaborative, K-12 from Auburn

University.

15.  When the defendant Board hired plaintiff, she had eleven (11) years

classroom experience teaching special education students in various age groups,

including three (3) years as a resource teacher and eight (8) years in self-contained

classrooms.  Plaintiff has taught students with severe disabilities; students with multiple

4

physical, health, and mental disabilities; and especially students with autism spectrum disorder (ASD).

16. From August 8, 2016 through August 25, 2016, when she was injured on-the-job while working at George Washington Carver Elementary School, Ms. McNeal taught special education students in grades kindergarten (K) through third grade, among other duties, in a self-contained class.

17. In the self-contained setting, both in Macon County and elsewhere, Ms. McNeal taught the special education students all academic subjects and social skills; addressed and assisted with all needs of the students from the time they enter the room in the morning until they leave at the end of the day; and coordinated with the students' occupational therapy and physical therapy providers. In the resource setting, Ms. McNeal provided intensive instruction to one or a few students at a time on particular subjects outside their regular classroom.

18. As a resource teacher, before coming to Macon County, Ms. McNeal taught students in Kindergarten (K) through third grade. As a teacher in a self-contained classroom, before coming to Macon County, plaintiff taught students with varying disabilities in grades K through second grade, grades K through third grade, sixth through eighth grades, and high school grades.

19. Plaintiff has special expertise in autism or autism spectrum disorder, the primary diagnosis for nearly all of the K through third grade students who were assigned to her self-contained classroom at G.W. Carver Elementary. Before being hired by the defendant Board, plaintiff had received several types of different advanced instruction

5

and training in working with and educating persons with autism, including during multiple summers, beginning in fall 2001 and as recently as at least 2013.

### *Onset and identification of Plaintiff's disability*

20. In October of 2015, while Plaintiff McNeal was teaching in another school system, a 16-year-old male student with autism and undisclosed schizophrenia picked her up twice and threw her down; and kicked and punched her. Plaintiff suffered injuries to both her cervical and thoracic spine.

21. Plaintiff originally saw and was treated for several months by an orthopedic surgeon, who prescribed extended physical therapy and then referred her in February 2016 to a neurologist, who continued to treat Plaintiff through her employment with the Defendant.

22. As a result of her initial on-the-job injury, Plaintiff was off work for approximately a week or so. For financial reasons, she then returned to work against the recommendation of her orthopedic surgeon, who wanted her to remain off work for a longer period.

23. Especially during the first few months after her initial injury, Ms. McNeal's physicians prescribed narcotic pain-relievers, an anti-spasmodic medication, and a medication used to treat nerve pain conditions.

24. In November 2016, after had Plaintiff suffered a second on-the-job injury while working for the Defendant Board (described below), her neurologist renewed the prescriptions for extra-strength non-steroidal anti-inflammatory drugs, narcotic pain-relievers, and the medication used to treat nerve pain conditions while increasing the daily dosage.

6

25. As diagnosed by her neurologist, Plaintiff suffers from myofascial pain syndrome, a chronic pain disorder in which there are sensitive points in the muscles and/or trigger points that cause pain. An acute muscle injury often leads to development of myofascial pain. Treatment options for myofascial pain syndrome include physical therapy, trigger point injections, pain medications, and relaxation techniques.

26. From October 2015 through the end of her employment with the Defendant Board in November 2016 (and thereafter), her physicians restricted her to sedentary job duties with no lifting over five pounds, squatting, bending, twisting, or reaching overhead.

27. As reflected by her physicians' restrictions on her activities, Ms. McNeal's thoracic and cervical injuries and her myofascial pain syndrome substantially limit her in various major life activities, such as sitting, standing, reaching, bending, and lifting.

28. Accordingly, when Ms. McNeal was hired to teach in Macon County, and through the present, Ms. McNeal has been a qualified individual with a disability within the meaning of the ADA.

### *Plaintiff's Employment with Defendant Board*

29. The first day of the 2016-17 school year in Macon County, and Ms. McNeal's first day at work, was Monday, August 1.

30. Ms. McNeal interviewed with Corey Porter, then-principal of George Washington Carver Elementary School, for a vacant, unidentified special education teacher position on the preceding Friday, July 29, 2016.

31. At the outset of the interview Ms. McNeal asked what the vacant special education position was that she was interviewing for. Principal Porter identified the position as a self-contained class with five (5) or six (6) students.

32. Plaintiff asked Principal Porter detailed questions about the position, students, and support of the school administration and staff.

33. Plaintiff's questions were designed to determine whether her job duties would implicate any of the physicians' restrictions, so she could determine whether she could perform the job's essential functions; and if any of the duties did implicate any of those restrictions, how the school would reasonably accommodate her disability.

34. Principal Porter represented to Plaintiff that she would have a class of not more than five or six students with moderate disabilities (autism and intellectual challenges); would not have to change any diapers (a task requiring lifting, bending, stooping, etc.), with a paraprofessional present to address such needs of the one student in a wheelchair); would have no students with serious behavioral issues (e.g., history of eloping, violent or aggressive acting out); and that all the other students would be mobile.

35. With respect to Plaintiff's job duties, Principal Porter represented that Plaintiff would be responsible for only her self-contained class, which meant meeting their educational needs, making sure the students' IEPs were completed, attending faculty meetings, getting the children on and off the bus safely, and getting them to breakfast and then the classroom in the morning.

36. Ms. McNeal told Principal Porter that she had been injured in a classroom in Phenix City; she had hurt her neck and back; the injury had almost paralyzed her (as her neurologist had informed her); and she was still under treatment.

8

37. Plaintiff informed Principal Porter about the specific physician's restrictions she was under because of her injuries, i.e., that she was restricted to sedentary job duties with no lifting over five pounds, squatting, bending, twisting, or reaching overhead.

38. Principal Porter represented to Plaintiff that none of the students in Plaintiff's class would require her assistance of those types, and that she would not need accommodations because she would not have the responsibility of being physical to serve those students.

39. Plaintiff advised Principal Porter that she had a doctor's appointment on August 1, and if she were hired, she would need to leave early that day, to which Principal Porter agreed.

40. Based on Principal Porter's representations regarding the class (a self-contained class with no children having behavioral issues) and the duties (not physically taxing to her disability), Ms. McNeal determined she would be physically able to perform the essential duties of the position and asked to be considered.

41. Principal Porter called her that evening (Friday, July 29) and offered her the position.

42. Plaintiff accepted the Defendant Board's offer and began work on August 1, 2016.

43. Plaintiff kept her physician appointment, and went to see her neurologist as scheduled on August 1, 2016.

44. That day, Plaintiff's neurologist gave Plaintiff the results of recent medical procedures, and gave Plaintiff a work excuse identifying her restrictions and also the diagnosis of her disability, as myofascial pain syndrome.

9

45. On August 2, 2016, Plaintiff gave Principal Porter the neurologist's work excuse with her current physical restrictions and the diagnosis of her disability as myofascial pain syndrome.

46. Beginning the first day of school on August 8, 2016, Plaintiff started becoming aware that Principal Porter had misrepresented or erroneously represented to Plaintiff the nature of her class.

47. Contrary to Principal Porter's representation, at least one student had severe behavioral issues: a 7-year-old boy with autism spectrum disorder. The boy constantly ran around, intentionally ran into hard objects (e.g., shelves, doors, windows) and other children, and was regularly disruptive.

48. In addition, immediately after school began, Defendant Board started imposing additional, unanticipated duties on Plaintiff.

49. In addition to her self-contained children, Ms. McNeal started receiving both parent and teacher referrals. Referrals involved detailed observation and assessment of a student as to whether the child needs special services, and if so, trying to get the child individualized special services. And, she also started being assigned resource students, i.e., students whom Ms. McNeal was responsible for giving intensive individual instruction in specific subjects. Ms. McNeal quickly had 5 resource students, again in addition to her self-contained children.

50. Specifically, that expansion of her duties (without any additional resources, as needed to accommodate her disabilities) made it much more likely that Ms. McNeal would not be able to attend to one or more of these special needs students' medical, emotional, or behavioral needs at an early stage before it turned into an aggravated or

10

even crisis situation, which could require physical or other acute intervention to prevent injury to that student or other students.

51. It was easily predictable that if circumstances required Ms. McNeal to perform such an intervention, given (a) her disability and medical restrictions (as ordered by her physician to prevent aggravation of her condition) and (b) the lack of additional help or resources to accommodate her disability (specifically, help in doing the things that would hurt Ms. McNeal to do), it could readily cause her further injury.

52. Plaintiff sought accommodations of her disabilities, as made necessary by Defendant Board's imposition of these additional duties, from the Defendant's Special Education Director.

53. Defendant Board refused to provide or even to discuss any reasonable accommodation of Plaintiff's disabilities as made necessary by the Defendant's imposition of these additional duties.

54. After seeking and being denied any accommodation, Plaintiff was re-injured on-the-job on August 25, 2016.

### Causes of Action

### COUNT ONE

### ADA – Failure to Provide Reasonable Accommodations
### (Resulting in On-the-Job Injury)

55. Plaintiff, Monique Regina McNeal, repeats and incorporates by reference the factual allegations set out in paragraphs 1 through 54 above.

56. Defendant Board is an employer within the meaning of the ADA.

57. Plaintiff is a qualified person with a disability within the meaning of the ADA.

11

58  Defendant Board at all material times knew of Plaintiff's real or perceived disabilities, as well as her record of such disabilities, within the meaning of the ADA.

59.  Plaintiff suffers from myofascial pain syndrome, a chronic pain disorder in which there are sensitive points in the muscles and/or trigger points that cause pain.  An acute muscle injury often leads to development of myofascial pain.

60.  Defendant at all material times knew that during the preceding school year, while teaching in a different school system, plaintiff had suffered thoracic and cervical injuries as the result of an on-the-job injury inflicted by a special education student.

61.  Defendant at all material times knew of the restrictions plaintiff's treating physician had prescribed for plaintiff as a result of those injuries, i.e., sedentary job duties with no lifting over five pounds, squatting, bending, twisting, or reaching overhead.

62.  As the duties of Defendant Board's special education teacher position had been represented to plaintiff by Principal Porter during their interview, for the specific position into which Defendant then hired plaintiff, Plaintiff was able to perform the essential functions of her job with or without reasonable accommodation, or without further accommodation than Defendant had represented she would receive.

63.  Even with the Defendant Board's imposition of additional, unexpected duties on Plaintiff without any advance notice, after she already had accepted the special education teaching position and begun working, Plaintiff was able to perform the essential functions of her job with reasonable accommodation.

64.  Plaintiff had (and continues to have) disabilities, or alternatively the Defendant Board regarded Plaintiff as having a disability.

65. Even with knowledge of the treating physician's restrictions that had been prescribed for Plaintiff, Defendant failed and refused to engage in meaningful interaction with Plaintiff regarding a reasonable accommodation for her disabilities, especially (but not only) regarding the additional, unexpected duties Defendant had imposed on Plaintiff.

66. Defendant refused to provide Plaintiff a reasonable accommodation for her disabilities, to address especially (but not only) the additional, unexpected duties Defendant had imposed on Plaintiff.

67. Defendant, through Principal Porter, misrepresented the disabilities, issues, or other characteristics of the students whom Plaintiff was to teach, and then did teach, in her special education class.

68. Defendant, through Principal Porter, misrepresented to Plaintiff, among other things, that none of the students assigned to her had behavioral issues, e.g., history of elopement, violent or otherwise aggressive acting out, harming themselves, etc.

69. A student in Plaintiff's class, with a history of severe behavioral issues that were not disclosed to Plaintiff until some time after she had begun teaching the class, began physically acting out starting the first day of class. The undisclosed issues specifically included an incident the previous year that another teacher had written the principal about, in which the then-7-year-old student had slammed another child's face into a water fountain. That student continued to be disruptive every single day following the first day of class until Plaintiff was re-injured.

70. Defendant refused to provide or even to discuss providing a reasonable accommodation to Plaintiff to address the issues raised by the undisclosed severe behavioral issues of this student and the disability of another (wheelchair bound) student,

as compounded by the other additional, unexpected duties Defendant imposed on Plaintiff.

71. Instead of reasonably accommodating Plaintiff's known disabilities, which the Defendant Board failed to do, the Board placed Plaintiff in a situation that was likely to and did cause her harm and aggravated her disabilities.

72. On August 25, 2016, that student, during the middle of teaching, began running and ramming himself into a wall, a shelf, and other objects. While Plaintiff, during the middle of teaching, was trying to stop that student from continuing to do so, that student pulled down violently on her arm and shoulder. This re-injured and exacerbated the preexisting injury to Plaintiff's neck, back, and shoulder; and exacerbated her disabilities.

73. As a result of this violent occurrence, Plaintiff was required to seek medical treatment; could not return to work at that time; and had to take leave from work because of this new on-the-job injury.

74. As a direct and proximate result of Defendant Board's refusal to engage in a good faith interactive process with Plaintiff regarding a reasonable accommodation of her disabilities, to address the undisclosed issues and characteristics of Plaintiff's students and the additional, unexpected duties the Board imposed on Plaintiff, and Defendant Board's failure to provide Plaintiff a reasonable accommodation, Plaintiff suffered an on-the-job injury that was further disabling and exacerbated her existing disabilities.

75. Defendant Board intentionally failed and refused after the beginning of school to provide Plaintiff a reasonable accommodation of her disabilities, in violation of the ADA.

14

76. Defendant's failure and refusal to provide Plaintiff a reasonable accommodation of her disabilities was willful, and done with malicious and reckless disregard for the federally-protected rights of plaintiff.

77. As a proximate result of these actions and omissions by Defendant in violation of the ADA, plaintiff has suffered injuries and damages as set forth in detail in paragraph 108 below.

COUNT TWO

**ADA – Failure to Provide Reasonable Accommodations
(Resulting in Termination of Employment)**

78. Plaintiff, Monique Regina McNeal, repeats and incorporates by reference the factual allegations set out in paragraphs 1 through 76 above.

79. On August 25, 2016, the same day Plaintiff was injured on-the-job by the student with severe behavioral issues, Plaintiff reported the incident and injury to Principal Porter.

80. On August 26, 2016, Plaintiff visited her neurologist for examination and treatment. The neurologist's office gave her a letter that confirmed Plaintiff had been under their care for several months for myofascial pain injury and requested Plaintiff be given a medical release, i.e., time off work, which Plaintiff gave to Principal Porter.

81. On or about August 30, 2016, Principal Porter telephoned Plaintiff and told Plaintiff that the Board had reviewed and discussed her doctor's August 26th letter, and that the Board wanted Plaintiff to resign.

82. Plaintiff did not resign.

15

83   On or about September 2, 2016, Plaintiff e-mailed Principal Porter and the Board's Human Resources Director, Dr. Melissa Williams, the full details of the events leading to Plaintiff's injury, the cause of her injury, and the manifestations of her injury.

84.   Also on or about September 2, 2016, Plaintiff learned of the Board's online injury report form, and filled it out and submitted it that day.

85.   By letter from Board Superintendent Dr. Jacqueline Brooks dated September 8, 2016, with Plaintiff having been off work since her on-the-job injury suffered on August 25, the Board placed Plaintiff on administrative leave, "effective immediately for an indefinite period of time," without stating any reasons for placing her on such leave.

86.   By separate letter from Superintendent Brooks also dated September 8, 2016, the Board gave Plaintiff notice of proposed termination of her employment.

87.   On November 2, 2016, during a specially-called meeting at which consideration of Superintendent Brooks' recommendation that Plaintiff's employment be terminated was the only item of business, the Defendant Board voted to accept Superintendent Brooks' recommendation to terminate Plaintiff's employment.

88.   By placing Plaintiff on administrative leave and giving her notice of the proposed termination of her employment less than two weeks after her on-the-job injury, and barely a week after Principal Porter, at the Board's urging, had requested Plaintiff's resignation and Plaintiff had then declined, the Defendant Board deprived Plaintiff of her right even to seek, as well as obtain, a reasonable accommodation of her disabilities, including but not limited to a short-term leave of absence to enable Plaintiff to resume her job duties as before.

89. By terminating Plaintiff's employment while she was still on administrative leave, the Defendant Board deprived Plaintiff of her right to seek, as well as obtain, a reasonable accommodation of her disabilities.

90. In almost immediately placing Plaintiff on administrative leave and giving her notice of proposed termination of her employment with the Board, and thereafter terminating her employment with the Board, Defendant Board failed and refused to provide Plaintiff a reasonable accommodation of her disabilities, in violation of the ADA.

91. Defendant's failure and refusal to provide Plaintiff a reasonable accommodation of her disabilities was willful, and done with malicious and reckless disregard for the federally-protected rights of plaintiff.

92. As a proximate result of these actions and omissions by Defendant in violation of the ADA, plaintiff has suffered injuries and damages as set forth in detail in paragraph 108 below.

## COUNT THREE

### ADA – Discrimination
### (Termination of Employment)

93 Plaintiff, Monique Regina McNeal, repeats and incorporates by reference the factual allegations set out in paragraphs 1 through 87 above.

94. In (a) placing Plaintiff on administrative leave and giving her notice of the proposed termination of her employment less than two weeks after her on-the-job injury, and barely a week after Principal Porter, at the Board's urging, had requested Plaintiff's resignation and Plaintiff had then declined, and (b) terminating Plaintiff's employment while she was still on administrative leave, the Defendant Board discriminated against Plaintiff because of her disabilities, in violation of the ADA.

17

95. Alternatively, in taking those actions, Defendant Board discriminated against Plaintiff because of her record of disabilities, or because the Board regarded her as disabled, in violation of the ADA.

96. Defendant's discrimination against Plaintiff because of her disabilities, or because of her record of disabilities, or because the Board regarded her as disabled, was willful, and done with malicious and reckless disregard for the federally-protected rights of plaintiff.

97. As a proximate result of these actions and omissions by Defendant in violation of the ADA, plaintiff has suffered injuries and damages as set forth in detail in paragraph 108 below.

## COUNT FOUR

### Rehabilitation Act -- Failure to Provide Reasonable Accommodations

98. Plaintiff, Monique Regina McNeal, repeats and incorporates by reference the factual allegations set out in paragraphs 1 through 74 and 79 through 89 above.

99. Defendant Board is, and at all times material to this complaint has been, a recipient of Federal financial assistance for the programs or activities at issue.

100. Defendant Board intentionally failed and refused after the beginning of school to provide Plaintiff a reasonable accommodation of her disabilities, resulting in Plaintiff suffering an on-the-job injury on August 25, 2016.

101. Almost immediately after Plaintiff suffered her on-the-job injury, Defendant Board placed Plaintiff on administrative leave and giving her notice of proposed termination of her employment with the Board, and thereafter terminated her employment with the Board.

102. By these actions and omissions, Defendant Board failed and refused to provide Plaintiff a reasonable accommodation of her disabilities, in violation of section 504 of the Rehabilitation Act, 29 U.S.C. §794.

103. As a direct proximate result of these actions and omissions by Defendant in violation of the Rehabilitation Act, plaintiff has suffered injuries and damages as set forth in detail in paragraph 108 below.

COUNT FIVE

**Rehabilitation Act – Discrimination**

104. Plaintiff, Monique Regina McNeal, repeats and incorporates by reference the factual allegations set out in paragraphs 1 through 87 above.

105. In (a) placing Plaintiff on administrative leave and giving her notice of the proposed termination of her employment less than two weeks after her on-the-job injury, and barely a week after Principal Porter, at the Board's urging, had requested Plaintiff's resignation and Plaintiff had then declined, and (b) terminating Plaintiff's employment while she was still on administrative leave, the Defendant Board discriminated against Plaintiff because of her disabilities, in violation of section 504 of the Rehabilitation Act, 29 U.S.C. §794.

106. Alternatively, in taking those actions, Defendant Board discriminated against Plaintiff because of her record of disabilities, or because the Board regarded her as disabled, in violation of section 504 of the Rehabilitation Act, 29 U.S.C. §794.

107. As a direct and proximate result of these actions and omissions by Defendant in violation of the Rehabilitation Act, plaintiff has suffered injuries and damages as set forth in detail in paragraph 108 below.

19

## Damages

108.  As a direct and proximate result of Defendants' various actions and omissions in violation of the ADA and the Rehabilitation Act as set out in the preceding Counts above, plaintiff's medical conditions have been exacerbated; she has suffered severe physical injury and pain, as well as severe mental pain and anguish, emotional distress, embarrassment, and humiliation; she has incurred medical, prescription, and other expenses related to treatment of her medical conditions; she has been terminated from her employment; she has suffered loss of income and benefits, specifically including but not limited to health insurance benefits; she has been denied the opportunity to advance in her career and has sustained corresponding economic and consequential damages; and has suffered other injuries and damages; and in reasonable probability Plaintiff will continue to suffer these various injuries and damages into the future.

## Prayer

WHEREFORE, Plaintiff, Monique Regina McNeal, respectfully requests that this Court assume jurisdiction of this action, and after trial enter judgment in favor of plaintiff and against defendant, and grant the following relief:

1. A declaratory judgment that the employment practices complained of herein are violative of the rights of plaintiff, Monique Regina McNeal, as secured by the Americans with Disabilities Act and §504 of the Rehabilitation Act, 29 U.S.C. §794;

2. Injunctive relief, including granting plaintiff, Monique Regina McNeal, an order enjoining defendant, their agents, successors, employees, attorneys, and those

acting in concert with defendant and at defendant's request from engaging in discriminatory employment practices on the basis of disability and retaliation;

3. Reinstatement or placement of plaintiff, Monique Regina McNeal, in the position(s) in which she would have worked absent defendant's discriminatory treatment, or front pay (including all applicable benefits) in lieu of reinstatement;

4. All back pay due plaintiff, Monique Regina McNeal, from the date of termination of her employment;

5. Compensatory damages for loss of wages, loss of benefits (including but not limited to retirement and insurance benefits), medical and prescription expenses, mental anguish, emotional distress, and physical pain and suffering, both past and future;

6. Punitive damages (on Plaintiff's claims under the ADA only);

7. Attorneys' fees;

8. Pre-judgment interest;

9. Costs; and

10. Such other and further legal or equitable relief as may be appropriate to effectuate the purposes of the ADA or the Rehabilitation Act or to which plaintiff, Monique Regina McNeal, may be entitled.

Respectfully submitted,

MARK ENGLEHART (ENG007)

OF COUNSEL:

**ENGLEHART LAW OFFICES**
9457 Alysbury Place
Montgomery, Alabama 36117-6005
(334) 782-5258
jmenglehart@gmail.com

FRED D. GRAY, JR. (GRA044)
Attorneys for Plaintiff,
Monique Regina McNeal

OF COUNSEL:

**GRAY, LANGFORD, SAPP, MCGOWAN, GRAY,**
**GRAY & NATHANSON, P.C.**
108 Eastside Street
P.O. Box 830239
Tuskegee, Alabama 36083-0239
(334) 727-4830
Fgrayjr@glsmgn.com

## **JURY DEMAND**

Plaintiff, Monique Regina McNeal, hereby demands trial by jury of all issues so
triable.

OF COUNSEL

## **DEFENDANT TO BE SERVED BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, OR SPECIAL PROCESS SERVER AT THE FOLLOWING ADDRESSES**:

Macon County Board of Education

Dr. Jacqueline A. Brooks
Superintendent
P.O. Box 830090
501 S. School Street
Tuskegee, AL 36083

## **AND**

Mrs. Elnora Smith-Love
President, Macon County Board of Education
P.O. Box 830090
501 S. School Street
Tuskegee, AL 36083