IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MONIQUE REGINA MCNEAL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:19-cv-00122-CWB ) |
| MACON COUNTY BOARD OF EDUCATION, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

This is an employment discrimination action brought by Monique Regina McNeal ("McNeal") pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* as amended, and section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794. Now before the court is a Motion for Summary Judgment (Doc. 51) filed by Macon County Board of Education ("MCBOE"). For the reasons set forth below, the court finds that summary judgment is due to be granted in favor of MCBOE on all claims.

**I.    Jurisdiction and Venue**

Subject matter jurisdiction is conferred by 28 U.S.C. § 1331. The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both. *See* 28 U.S.C. § 1391; Fed. R. Civ. P. 4(k)(1)(A).

**II.    Standard of Review**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

1

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for the motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). That responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* Alternatively, a movant who does not have a trial burden of production can simply assert that the nonmoving party "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. … [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

Under either scenario, the burden then shifts to the nonmoving party to establish—by evidence beyond the pleadings—that a genuine dispute of material fact exists as to each element of the underlying claims. *See Celotex Corp.*, 477 U.S. at 324; Fed. R. Civ. P. 56(c)(1)(A). A genuine dispute exists if the nonmoving party produces sufficient evidence to allow a reasonable factfinder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

When, as here, a plaintiff fails to respond to a defendant's motion for summary judgment, "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101-02 (11th Cir. 2004) (citation omitted). Though a court "need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted," it must review the evidentiary materials accompanying the motion to ensure that summary judgment is "appropriate." *Id.* at 1101-02; Fed. R. Civ. P. 56(e).

### III. Background

McNeal was hired by MCBOE as a special education teacher and assigned to a self-contained classroom at George Washington Carver Elementary School for the 2016-17 school year. (Doc. 52-4 at p. 25; Doc. 6 at ¶ 15). Prior to being hired, McNeal had suffered injuries to her cervical and thoracic spine as a result of being assaulted by a student at her previous school of employment. (Doc. 52-4 at p. 37; Doc. 6 at ¶ 24). During her interview with Corey Porter, the then-principal of George Washington Carver Elementary School, McNeal allegedly conveyed the limitations she associated with those injuries—which included not being able to teach students with physically aggressive behaviors. (Doc. 52-4 at p. 37; Doc. 6 at ¶¶ 34-37). Principal Porter allegedly assured McNeal in response that the children who would be in her classroom did not exhibit such characteristics. (Doc. 52-4 at p. 38; Doc. 6 at ¶¶ 40-42).

Unfortunately, however, one of McNeal's students did in fact become physically aggressive during a classroom incident on August 25, 2016. (Doc. 52-4 at p. 41; Doc. 6 at ¶ 88). When McNeal attempted to intervene in the student's disruptive behavior, the child stepped on McNeal's feet and pulled down on her arm, at which point McNeal heard a "loud pop" in her neck and felt sharp pain in her neck, arm, and back. (Doc. 52-4 at pp. 41, 43; Doc. 6 at ¶ 89). The following day, McNeal visited The Neurological Care Center of Montgomery for evaluation (Doc. 52-9), and CRNP Teresa Watkins drafted a letter asking that MCBOE "allow [McNeal] a medical release." (Doc. 52-10). McNeal provided the letter to Principal Porter (Doc. 52-2 at p. 35), who in turn provided copies to both the MCBOE superintendent and the MCBOE director of human resources. (Doc. 52-2 at pp. 36, 51).

On September 1, 2016, Human Resources Director Melissa Williams sent the following email message to McNeal: "Mr. Porter forwarded it to me. How much time are you requesting to

be off work?" (Doc. 52-15). McNeal never responded to the inquiry because, as she later explained in her deposition, "I could not provide that answer." (Doc. 52-4 at p. 34).

On September 8, 2016, MCBOE Superintendent Jacqueline Brooks placed McNeal on administrative leave and notified McNeal that she would be recommending a termination of her employment. (Doc. 52-17; Doc. 52-18). MCBOE subsequently approved the recommendation, and McNeal's employment was terminated on November 2, 2016. (Doc. 52-12).

On April 27, 2017, McNeal filed a charge of discrimination with the EEOC alleging unlawful employment practices. (Doc. 6 at ¶ 9.a). On November 15, 2018, the EEOC issued McNeal a Notice of Right to Sue. (*Id.* at p. 40). McNeal timely filed her Complaint in this court on February 13, 2019 (Doc. 1), followed by an Amended Complaint on March 20, 2019 (Doc. 6), which is the operative pleading for review.

The Amended Complaint contains the following claims for relief:

- Count I & II – Failure to Provide Reasonable Accommodations under ADA;
- Count III – Discrimination under ADA;
- Count IV – Retaliation, Termination of Employment under ADA;
- Count V – Failure to Provide Reasonable Accommodations under Rehabilitation Act;
- Count VI – Discrimination under Rehabilitation Act; and
- Count VII – Retaliation, Termination of Employment under Rehabilitation Act.

(*Id.*). MCBOE has now moved for summary judgment on all such claims. (Doc. 51). MCBOE primarily argues that McNeal is not "qualified" for purposes of the ADA or the Rehabilitation Act. (Doc. 53 at p. 2). Alternatively, MCBOE argues that McNeal did not request a "reasonable accommodation" and that McNeal failed to engage in the interactive process for identifying a potential accommodation. (*Id.* at pp. 3-7). MCBOE finally argues that it had a legitimate, nondiscriminatory basis for the termination of McNeal's employment. (*Id.* at p. 23).

**IV.     Discussion**

    **A.     Qualified Individual**

The Eleventh Circuit analyzes ADA discrimination claims under the *McDonnell-Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  To state a cognizable claim, a plaintiff must establish: (1) that she has a disability; (2) that she is a qualified individual, meaning that she can perform the essential functions of her job with or without a reasonable accommodation; and (3) that the employer discriminated against her on the basis of disability.  *See Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007).  Claims for discrimination under the Rehabilitation Act are subject to the same analysis.  *See, e.g., Everett v. Cobb Cnty. Sch. Dist.,* 138 F.3d 1407, 1409 (11th Cir. 1998).  The only salient difference is that a claim under the Rehabilitation Act can only be brought against a recipient of federal funding.  *See Barnes v. Gorman*, 536 U.S. 181, 185 (2002).  For purposes of this opinion, the court will address McNeal's claims primarily in terms of the ADA.

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities ...; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C).  Whether an individual's impairment is a disability under the ADA does not demand extensive analysis, and "[t]he definition of disability … shall be construed in favor of broad coverage of individuals." 42 U.S.C. § 12102(4)(A); *see also Mazzeo v. Color Resols. Int'l, LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014) (explaining that the primary object of ADA cases should be to determine whether covered entities have complied with their obligations and whether discrimination has occurred, as opposed to whether an impairment substantially limits a major life activity); *Smart v. Dekalb Cnty, Ga*, No. 1:16-cv-826, 2018 WL 1089677 *6 (N.D. Ga. Feb. 26, 2018) (quoting *Mazzeo*).

McNeal alleges that she "suffers from myofascial pain syndrome, a chronic pain disorder in which there are sensitive points in the muscles and/or trigger points that cause pain." (Doc. 6 at ¶ 73). McNeal further alleges that "Defendant at all material times knew that during the preceding school year … [she] had suffered cervical and thoracic injuries as a result of an on-the-job injury inflicted by a special education student." (*Id*. at ¶ 74). MCBOE does not here dispute that McNeal had preexisting injuries or disabilities. Rather, it argues that McNeal is not a "qualified individual" under the ADA "because the record evidence in this case clearly establishes that [she] could not perform the essential functions of the position for which she was hired." (Doc. 53 at p. 10).

The ADA defines "qualified individual" as an individual with a disability "who, with or without reasonable accommodation, can perform the essential functions of the employment position … ." 42 U.S.C. § 12111(8). Essential functions "are the fundamental job duties of a position that an individual is actually required to perform." *Holly v. Clairson Indus. L.L.C.*, 492 F.3d 1247, 1256 (11th Cir. 2007) (citation omitted). If "the individual is unable to perform an essential function of his job, even with an accommodation, he is, by definition, not a qualified individual and, therefore, not covered under the ADA. ... [T]he ADA does not require the employer to eliminate an essential function of the plaintiff's job." *Id*. (quoting *D'Angelo v. Conagra Foods, Inc.*, 422 F.3d 1220, 1229 (11th Cir. 2005) (internal quotations omitted)). Moreover, when conducting an ADA analysis, "consideration shall be given to the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8).

With respect to whether McNeal can perform the essential functions of the special education teaching position for which she was hired, the court notes that the written job description expressly characterized the physical requirements for the position as involving "heavy work" with occasional exertion levels up to 100 pounds of force. (Doc. 52-6 at p. 4; *see also* Doc. 52-3 at

pp. 3 & 13). By her own admission, however, McNeal at all relevant times has had "limitations physically" that would impede her ability to meet those requirements: "I cannot be in a situation where I have to deal with behaviors and have to maybe restrain or become, you know, be physically in that position currently." (Doc. 52-4 at p. 37). McNeal even testified in her deposition that she would not have accepted the position had she known a student needing substantial physical intervention would be in her classroom. (Doc. 52-4 at p. 38). After the underlying incident highlighted the requisite physical demands of the position, McNeal therefore admittedly chose not to return:

> I want to word it correctly because it's not that I couldn't be. Because I could still do those duties if I chose to, but I was choosing not to based on the situation that I was previously in before that interview and based on what my specialists and doctors were telling me, the reality of this being a teacher with these type of students could have paralyzed you.

(*Id*.).

Viewing the evidence in a light most favorable to McNeal as the court is bound to do at this stage, it is clear that McNeal cannot be deemed a "qualified individual." The undisputed testimony and matters of record reflect one of two alternate scenarios surrounding the termination of McNeal's employment: (1) that McNeal suffered from a disability that prevented her from performing the essential functions of her job <u>or</u>; (2) that McNeal was capable of performing those functions but voluntarily chose not to do so. The second scenario, which appears to be supported by McNeal's deposition testimony that "I could still do those duties if I chose to, but I was choosing not to" (Doc. 52-4 at p. 38), would be conclusively fatal to her claims. *See, e.g., Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260 n.8 (11th Cir. 2001) ("[Plaintiff] either could not or would not perform the essential functions of the … job and, therefore, he was not 'otherwise qualified' to do it.") (citing 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m)).

So too would an inability to perform the required duties be fatal to McNeal's claims unless she was denied a reasonable accommodation.  In that regard, the Amended Complaint avers that "[e]ven with the Defendant Board's imposition of additional, unexpected duties on Plaintiff without any advance notice, after she already had accepted the special education teaching position and begun working, Plaintiff was or would have been able to perform the essential functions of her job with reasonable accommodation." (Doc. 6 at ¶ 77).  The Amended Complaint further avers that MCBOE "refused to provide or even to discuss any reasonable accommodation of Plaintiff's disabilities as made necessary by the Defendant's imposition of these additional duties." (*Id*. at ¶ 67).

Comparing those allegations to the record evidence, the court notes that an August 26, 2016 letter from CRNP Teresa Watkins was sent on behalf of McNeal "requesting a medical release for her at this time to give her sufficient time to heal." (Doc. 52-10).  Although the Amended Complaint attempts to characterize the request as "a short-term leave of absence to enable Plaintiff to resume her job duties as before" (Doc. 6 at ¶ 107), the letter says nothing about leave being "short-term."  (Doc. 52-10).  Indeed, the letter contains no temporal markers at all by which McNeal's recovery could be gauged. (*Id*.).  MCBOE therefore contacted McNeal to confirm its receipt of the letter and to directly ask "[h]ow much time are you requesting to be off work?". (Doc. 52-15 at p. 1).  Yet McNeal failed to provide a response—instead explaining in her deposition that the period of leave was intended to be indefinite, *i.e.,* "I could not provide that answer." (Doc. 52-4 at p. 34).

In *Wood v. Green*, 323 F.3d 1309 (11th Cir. 2003), the Eleventh Circuit specifically rejected the argument that a request for an indefinite leave of absence constitutes a reasonable accommodation under the ADA:

> While a leave of absence might be a reasonable accommodation in some cases, Wood was requesting an indefinite leave of absence. Wood might return to work within a month or two, or he could be stricken with another cluster headache soon after his return and require another indefinite leave of absence. Wood was not requesting an accommodation that allowed him to continue work in the present, but rather, in the future—at some indefinite time.
>
> … The ADA covers people who can perform the essential functions of their jobs presently or in the immediate future. … As a result, we conclude from the record that Wood was not a qualified individual under the ADA.

*Id.* at 1314 (citations omitted).  Because the Eleventh Circuit has concluded that a request for indefinite leave is not a reasonable accommodation, the court is compelled to find that the letter presented by McNeal was insufficient to render her a "qualified individual."  *See also Wade v. Fla. Dep't of Juv. Just.*, 745 F. App'x 894, 896 (11th Cir. 2018) ("[W]e have held that a request for an indefinite leave of absence, which may allow an employee to work at some uncertain point in the future, is not a reasonable accommodation."); *Billups v. Emerald Coast Utilities Auth.*, 714 F. App'x 929, 935 (11th Cir. 2017) ("It is undisputed that [plaintiff] was unable to perform the essential functions of his position as of the date of his termination. And the record shows that [plaintiff] was essentially requesting a leave of absence that would allow him to work 'at some indefinite point' in the future.").

Not only that, the ADA "envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated."  *Williamson v. Clarke Cnty. Dep't of Hum. Res.*, 834 F. Supp. 2d 1310, 1319 (S.D. Ala. 2011) (citing 29 C.F.R. § 1630.2(o)(3)) ("This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.").  If an employee makes a specific request for an accommodation that the employer believes is unreasonable, the employer is not immediately relieved from all responsibility; rather, the employer must still make a reasonable effort to communicate with the

9

employee as to whether a reasonable accommodation can be provided. *See, e.g., Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286-87 (11th Cir. 1997). Here, the record reflects that MCBOE responded to the request for leave by specifically asking McNeal how much leave was needed and that McNeal failed to provide a response. (Doc. 52-4 at p. 34: "I could not provide that answer."). Because McNeal admittedly failed to engage in the interactive process, it would not have been possible for MCBOE to "identify the precise limitations resulting from [her] disability and potential reasonable accommodations that could overcome those limitations." *See* 29 C.F.R. § 1630.2(o)(3). Liability thus cannot attach. *See Stewart*, 117 F.3d at 1287 ("Liability simply cannot arise under the ADA when an employer does not obstruct an informal interactive process; makes reasonable efforts to communicate with the employee and provide accommodations based on the information it possesses; and the employee's actions cause a breakdown in the interactive process.").[1]

Because McNeal has not demonstrated a genuine issue of material fact that she was denied a reasonable accommodation that could have enabled her to perform her employment duties, summary judgment is due to be entered in favor of MCBOE on Counts I, II, III, V, and VI.

---

[1] McNeal's deposition testimony could be construed as evidence that she requested certain other accommodations prior to her request for leave. (Doc. 52-4 at pp. 77-96). To the extent McNeal alleges that she asked to be relieved from morning bus duty, the court cannot discern from the record any evidence that would suggest how the presence or absence of those duties in any way had an effect on her admitted physical limitations of dealing with students in the classroom. To the extent McNeal alleges that she asked to be moved to a different type of teaching position that would not have similar physical demands, the court notes that the record shows no such position to have been vacant. *See Lucas*, 257 F.3d at 1257 (rejecting reassignment argument where "there were no vacancies in that position"). And to the extent McNeal alleges that she asked for additional personnel to be staffed in her classroom for assistance, the court notes that it would be unreasonable to require MCBOE to incur such an undue financial hardship. *See, e.g., Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1526 (11th Cir. 1997) ("The ADA imposes upon employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in undue hardship to the employer.") (citing 42 U.S.C. § 12112(b)(5)(A)); *Morisky v. Broward Cnty.*, 80 F.3d 445, 447 (11th Cir. 1996).

**B.     Retaliation**

In order to prevail on an ADA retaliation claim, a plaintiff must show: (1) that she "engaged in conduct protected by the ADA"; (2) that she "was subjected to an adverse employment action at the time, or after the protected conduct took place"; and (3) that the defendant "took an adverse employment action against [her] because of [her] protected conduct." 3C Fed. Jury Prac. & Instr. § 172.24 (5th ed.). *See also Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1158 (11th Cir. 2005). "Once a prima facie case has been established, the employer has the burden of articulating a legitimate nondiscriminatory reason for the challenged employment decision. … The plaintiff then must 'demonstrate that it will be able to establish at trial that the employer's proffered non-discriminatory reasons are a pretextual ruse designed to mask retaliation.'" *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999) (quoting *Stewart,* 117 F.3d at 1287).

Construing the record most favorably to McNeal, the court finds sufficient evidence (at least for purposes of evaluating summary judgment) that she engaged in statutorily protected conduct and that she suffered an adverse employment action, *i.e.*, termination. There likewise is sufficient evidence to indulge a presumption at this stage that a causal relationship exists between those two events so as to shift the burden to MCBOE to articulate a legitimate nondiscriminatory reason for the termination. *See Farley*, 197 F.3d at 1337.[2]   For its part, MCBOE asserts that McNeal "was terminated after [her] own doctors advised the defendant that [McNeal] could not perform the essential functions of her position and should not be in the very classroom to which

---

[2] "To prove a causal connection, we require a plaintiff only to demonstrate 'that the protected activity and the adverse action were not *wholly unrelated.*'" *Farley*, 197 F.3d at 1337 (citations omitted) (emphasis in original). "[A] plaintiff satisfies this element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." *Id*. (citing *Clover v. Total Sys. Servs., Inc*., 176 F.3d 1346, 1354 (11th Cir. 1999)).

11

[she] was assigned." (Doc. 53 at pp. 23-24; *see also* Doc. 52-1 at ¶ 17: "Based on her doctor's statements, I concluded that having Ms. McNeal remain in the classroom would pose a safety risk to the students in the classroom and to Ms. McNeal herself."). The court views MCBOE's explanation to be facially legitimate and non-discriminatory, and McNeal has offered no evidence or argument sufficient to create a genuine issue of material fact as to whether the explanation is a "pretextual ruse." *Stewart*, 117 F.3d at 1287. The claim of retaliation therefore fails, and summary judgment is due to be entered as to Counts IV and VII.

## V.     Conclusion

The court finds that summary judgment is due to be and is GRANTED in favor of MCBOE on all claims brought under the ADA in Counts I, II, III, and IV. Because an analysis of claims brought under the Rehabilitation Act mirrors that of claims brought under the ADA, the court likewise finds that summary judgment is due to be entered in favor of MCBOE on all claims asserted in Counts V, VI, and VII. *See T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty., Fla.,* 610 F.3d 588, 604 (11th Cir. 2010) (holding that "the same standards govern discrimination" under § 504(a) and the ADA); *see also Burgos-Stefanelli v. Secretary, U.S. Dept. of Homeland Sec.*, 410 F. App'x 243, 245 (11th Cir. 2011) ("[W]e assess retaliation claims pursuant to the Rehabilitation Act under the framework we use in assessing Title VII retaliation claims.") (citing *Ellis v. England,* 432 F.3d 1321, 132324 (11th Cir.2005)). A final judgment will be separately entered.

DONE this the 20th day of October 2022.

**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**