# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

September 04, 2024

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 23-10410-HH
Case Style: Monique McNeal v. Macon County Board Of Education
District Court Docket No: 3:19-cv-00122-CWB

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing is timely only if received in the clerk's office within the time specified in the rules. **A petition for rehearing must include a Certificate of Interested Persons and a copy of the opinion sought to be reheard.** See 11th Cir. R. 35-5(k) and 40-1.

Costs
Costs are taxed against Appellant(s) / Petitioner(s).

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

<u>Clerk's Office Phone Numbers</u>

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion

[DO NOT PUBLISH]

# In the
# United States Court of Appeals
# For the Eleventh Circuit

_____

No. 23-10410

Non-Argument Calendar

_____

MONIQUE REGINA MCNEAL,

　　　　　　　　　　　　　　　　　　　　　　　　Plaintiff-Appellant,

*versus*

MACON COUNTY BOARD OF EDUCATION,

　　　　　　　　　　　　　　　　　　　　　　　　Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 3:19-cv-00122-CWB

_____

Case 3:19-cv-00122-CWB   Document 76   Filed 09/27/24   Page 4 of 12
USCA11 Case: 23-10410   Document: 38-1   Date Filed: 09/04/2024   Page: 2 of 10

2                    Opinion of the Court                23-10410

Before WILLIAM PRYOR, Chief Judge, and ROSENBAUM and GRANT, Circuit Judges.

PER CURIAM:

Monique Regina McNeal appeals the summary judgment in favor of the Macon County Board of Education and against her complaint of disability discrimination and retaliation under the Americans with Disabilities Act of 1990 and the Rehabilitation Act of 1973. She also appeals the denial of her request under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment. We affirm.

In July 2016, McNeal interviewed with Principal Corey Porter for a position as a special education teacher at George Washington Carver Elementary School in Macon County. McNeal told Porter she had suffered an injury to her spine at a school where she previously worked. She explained that she would be unable to restrain students, squat, bend, or lift over five pounds repeatedly but that she could perform classroom instruction and paperwork. She refrained from performing physical duties due to her prior injury and advice from her doctors.

The job description for a special education teacher in effect at the time of McNeal's interview had not been revised since 2004. It described physical requirements that a special education teacher would need to exert up to 100 pounds of force occasionally, up to 50 pounds of force frequently, and up to 20 pounds of force as needed. Jacqueline Brooks, the superintendent of the Macon

Case 3:19-cv-00122-CWB   Document 76   Filed 09/27/24   Page 5 of 12
USCA11 Case: 23-10410   Document: 38-1   Date Filed: 09/04/2024   Page: 3 of 10

23-10410                Opinion of the Court                3

County School System, stated that it would be unsafe for students in a special education classroom not to have a teacher who could exert up to 50 pounds of force and physically lift, catch, or restrain them if necessary.

In August 2016, McNeal began the position as a special education teacher in a self-contained classroom with assistance from a paraprofessional. Shortly after the start of the school year, McNeal requested an accommodation for an external paraprofessional in addition to her current paraprofessional because one of her student's physical behaviors were dangerous and McNeal was limited in what she could do physically to respond to those behaviors. The external paraprofessional she requested worked with only one student in a wheelchair who was not part of McNeal's class and only came to the room to use the restroom. McNeal's request was denied. The administration asserted that there were no other teachers available to assist McNeal or resources to hire someone.

On August 25, 2016, McNeal was injured at work. In an email and injury report that she wrote describing the incident, McNeal stated that a student was uncooperative, stepped on her feet, pulled her arms, and caused a "pop" in her neck. She developed pain in her head, arm, and upper body.

The next day, McNeal requested sick leave and visited her medical provider, Nurse Practitioner Teresa Watkins. Watkins wrote a letter stating that McNeal had been receiving care for several months and requesting a "medical release" to "give [McNeal]

Case 3:19-cv-00122-CWB   Document 76   Filed 09/27/24   Page 6 of 12
USCA11 Case: 23-10410    Document: 38-1    Date Filed: 09/04/2024    Page: 4 of 10

4                        Opinion of the Court                    23-10410

sufficient time to heal." The letter did not estimate the time it would take for McNeal to recover.

On September 1, 2016, McNeal forwarded Watkins's letter to Dr. Melissa Williams, the Director for Human Resources for Macon County Public Schools. Williams asked McNeal, "How much time are you requesting to be off work?" McNeal responded with an email containing Watkins's letter. McNeal did not answer Williams's question about how much time she was requesting to be off work because she could not provide the answer.

Porter told McNeal on the phone that he had received the request from Watkins, had discussed McNeal's situation with Brooks and Williams, and that they were suggesting McNeal resign. McNeal was surprised by the request because she believed that all she needed was time to heal. She later stated she would not resign. But she did not tell Porter or anyone on the Board how much time she would need to heal and did not return to work. On September 8, 2016, Brooks sent McNeal a letter stating that she would be placed on administrative leave and that she would recommend McNeal's termination at an upcoming Board meeting.

On September 27, 2016, Watkins wrote a letter recommending that McNeal not be in an environment where children might pull on her, as such actions could reinjure her. Watkins also stated that if McNeal was not provided with assistance reinjury was more likely. The letter stated that McNeal would be seen on November 1 to determine a return-to-work date. Brooks received this letter before the Board meeting but never received further information

Case 3:19-cv-00122-CWB   Document 76   Filed 09/27/24   Page 7 of 12
USCA11 Case: 23-10410   Document: 38-1   Date Filed: 09/04/2024   Page: 5 of 10

23-10410                Opinion of the Court                    5

about a return-to-work date. On November 2, 2016, the Board terminated McNeal's employment.

McNeal filed an amended complaint against the Board, which moved for summary judgment. The Board argued that McNeal was not a qualified individual because she could not perform the essential functions of the job. It argued that McNeal did not request a reasonable accommodation and abandoned the interactive process. It also argued that it had a legitimate, nondiscriminatory reason for terminating McNeal.

The district court granted the Board summary judgment. It ruled that McNeal was not a qualified individual because she could not perform the essential functions of the job or voluntarily chose not to do so. It ruled that McNeal's request for indefinite leave was not a reasonable accommodation and that she failed to engage in the interactive process. It also ruled that a request for additional personnel would impose an undue burden on the Board. It ruled that although McNeal had established a *prima facie* case of retaliation, she had failed to establish that the Board's asserted reason for terminating her was pretextual. McNeal moved to alter or amend the judgment under Rule 59(e), which the district court denied.

We review the grant of summary judgment *de novo*, drawing all factual inferences in the light most favorable to the nonmoving party. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the

denial of a motion to alter or amend the judgment for abuse of discretion. *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1313 (11th Cir. 2023).

McNeal first argues that she was discriminated against because she was a qualified individual and the Board failed to accommodate her. Both the Americans with Disabilities Act, 42 U.S.C. § 12112(a), and the Rehabilitation Act, 29 U.S.C. § 794(a), prohibit discrimination based on disability. The standard for liability under both Acts is the same, and we rely on precedents construing them interchangeably. *Ingram v. Kubik*, 30 F.4th 1241, 1256 (11th Cir. 2022).

To succeed on her claim, McNeal had to establish that she had a disability, that she was a qualified individual under the Americans with Disabilities Act, and that her employer discriminated against her based on her disability. *Akridge v. Alfa Ins. Companies*, 93 F.4th 1181, 1191 (11th Cir. 2024). The Act defines a qualified individual as an individual with a disability "who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). Essential functions "are the fundamental job duties of a position that an individual with a disability is actually required to perform." *Holly v. Clairson Indus. L.L.C.*, 492 F.3d 1247, 1257 (11th Cir. 2007). In determining whether a duty is essential, we give "substantial weight" to the employer's view, including both the "official position"—such as written descriptions in job advertisements—and the testimony of supervisors. *Id.* at 1257-58. But the employer's view is not conclusive,

Case 3:19-cv-00122-CWB   Document 76   Filed 09/27/24   Page 9 of 12
USCA11 Case: 23-10410   Document: 38-1   Date Filed: 09/04/2024   Page: 7 of 10

23-10410               Opinion of the Court                        7

and we consider other factors, including the consequences of not requiring an employee to perform the function and the work experience of past and current employees in similar jobs. *Id.* at 1258. An employee's refusal to perform the essential functions of a job renders them unqualified for the job. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260 n.8 (11th Cir. 2001).

The district court did not err in ruling that McNeal was not a qualified individual. The record establishes that moderate to intense physical engagement with students was an essential function of a special education teacher in Macon County. Although McNeal stated that when she was hired, she believed she would not be required to repetitively lift more than five pounds, the job description and supervisor testimony established otherwise. *See Holly*, 492 F.3d at 1257-58. The job description detailed that special education teachers would need to occasionally exert up to 100 pounds of force and frequently exert up to 50 pounds of force. Brooks reaffirmed that it would be unsafe for a teacher to be unable to exert those amounts of force or lift, restrain, and chase students. *See id.* And McNeal experienced a physically demanding encounter with a student soon after starting the job. *See id.* McNeal's testimony that she would not physically interact with students would preclude her from being a qualified individual. *See Lucas*, 257 F.3d at 1260 n.8.

"An employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide 'reasonable accommodations' for the disability—unless doing so would impose undue hardship on the employer." *Id.* at 1255. To

8                    Opinion of the Court                    23-10410

establish that an accommodation is reasonable, a plaintiff must prove that the proposed accommodation would enable her to perform the essential functions of the job. *Id.* at 1255-56. After an employee establishes that an accommodation is reasonable, the employer bears the burden of establishing undue hardship. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000). A request for indefinite leave, so an employee can work at "some uncertain point in the future," is not a reasonable accommodation. *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003). An employer is not required to reassign essential job functions. *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1527-28 (11th Cir. 1997). Only after an employee has requested a reasonable accommodation must their employer initiate an informal, interactive process to select an appropriate accommodation. *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1335 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 2465 (2023).

    The district court did not err in ruling that McNeal's proposed accommodations were not reasonable or posed an undue burden to the Board. McNeal's request for leave was not a reasonable accommodation because she did not specify the time she would need to heal and did not respond to Williams's email requesting the timeframe. To be sure, Watkins's letter a month after McNeal's initial leave request specified that Watkins would determine a return-to-work date in November, but the Board never received a return-to-work date. A request for leave at a future unspecified date was not a reasonable accommodation. *Wood*, 323 F.3d at 1314. In addition, McNeal could not perform the essential functions of the job when she was hired, and Watkins's second

Case 3:19-cv-00122-CWB   Document 76   Filed 09/27/24   Page 11 of 12
USCA11 Case: 23-10410   Document: 38-1   Date Filed: 09/04/2024   Page: 9 of 10

23-10410               Opinion of the Court                    9

letter stated that McNeal would have those limitations regardless of any proposed leave. So, McNeal's request for leave could not be a reasonable accommodation, as it would not allow her to perform the essential functions of her job. *See Lucas*, 257 F.3d at 1255-56. McNeal's argument that she did not cause the breakdown in the interactive process is unavailing because the Board did not have to engage in the interactive process when McNeal failed to make a reasonable request for accommodation. *See Owens*, 52 F.4th at 1335.

McNeal's request for a second paraprofessional was not reasonable because it would have required the Board to reallocate essential functions of her job in physically engaging with children. *See Holbrook*, 112 F.3d at 1527-28. And the district court did not err in ruling that it imposed an undue burden on the Board. *See Earl*, 207 F.3d at 1367. Although McNeal stated that a second paraprofessional was available, that aide could not serve in her classroom because she was assigned to assist a wheelchair-bound student in other classes. And the Board asserted that there were no other employees available to assist in McNeal's classroom and that it did not have resources to hire someone else. The district court did not err in granting summary judgment on McNeal's discrimination claim.

As to her retaliation claim, McNeal argues that the Board's reasons for terminating her were pretextual. After an employee has established a *prima facie* case of retaliation, an employer must offer a legitimate, nondiscriminatory reason for its decision. *Gogel v. Kia Motors Mfg. of Ga.*, 967 F.3d 1121, 1135-36 (11th Cir. 2020) (en banc). If the employer does so, the employee must prove that the

Case 3:19-cv-00122-CWB   Document 76   Filed 09/27/24   Page 12 of 12
USCA11 Case: 23-10410   Document: 38-1   Date Filed: 09/04/2024   Page: 10 of 10

10                  Opinion of the Court                  23-10410

proffered nondiscriminatory reason is pretextual. *Id.* at 1136. To establish pretext, a plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* The plaintiff must meet the employer's stated "reason head on and rebut it." *Id.* She must prove both that the proffered reason was false, and that retaliation was the real reason. *Id.*

McNeal failed to prove that the Board's explanation for terminating her—her inability to perform essential functions of the job—was a pretext for retaliation. McNeal's arguments on appeal do not establish sufficient weaknesses such that a reasonable factfinder could find the Board's stated nondiscriminatory reason unworthy of credence. *See id.* The record establishes that there is no genuine dispute of fact that a special education teacher had to perform physical duties that McNeal could not or would not perform at the time of her hiring, that McNeal injured herself in a physical interaction with a student soon after starting the job, and that she later could not or would not return to work. And the record establishes that the Board terminated McNeal's employment because she could not perform the duties of a special education teacher with a reasonable accommodation that would not cause the Board undue hardship.

We **AFFIRM** the summary judgment in favor of the Board and the denial of McNeal's motion to alter or amend.